UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ROGELIO C.,[1]<br><br>   Plaintiff,<br><br> v.<br><br>MARTIN O'MALLEY,<br><br>   Defendant. | Case No.  23-cv-05446-RMI<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 12, 16 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that Plaintiff's disability had ceased under Titles II and VII of the Social Security Act. *See* Admin. Rec. at 14.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* at 4. As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Dkts. 6, 8) and both parties have filed briefs (Dkts. 12, 16). For the reasons stated below, Plaintiff's motion for summary judgment is GRANTED, Defendant's motion is DENIED, and the case is REMANDED to the ALJ for further proceedings consistent with this order.

**I. Background**

Plaintiff was born in 1994. AR at 47. He received an individualized education plan (IEP)

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in eight attachments to Docket Entry #11. *See* Docs. 11-1 through 11-8.

in school beginning in 2001. *Id.* at 1. On March 27, 2013, the Social Security Administration determined that Plaintiff had been disabled since June 1, 2002. *Id.* at 14. Only a small amount of medical evidence underlying the 2013 decision is included in the present record. That evidence is as follows:

- An evaluation by Dr. Sara Boyd contained relatively normal mental status examination findings. AR at 361. Dr. Boyd assessed Plaintiff's full-scale IQ at 73, in the "borderline low" range. *Id.* at 362. She opined that Plaintiff had two "[m]oderate impairment[s]": in his ability to perform and sustain day-to-day work activities; and in his ability to maintain concentration, attention, persistence, and pace. *Id.* at 364.
- Dr. A. Garcia, a consultant for the SSA, completed a form indicating a number of moderate limitations as well as marked limitations in Plaintiff's "ability to understand and remember detailed instructions[,]" "ability to carry out detailed instructions[,]" and "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR at 368–69. Dr. Garcia concluded that Plaintiff was "[u]nable to perform simple repetitive tasks. Unable to maintain concentration, persistence or pace. Not able to relate well to supervisors, coworkers, or general public. Not able to adapt to work changes." *Id.* at 370. On a second form, Dr. Garcia endorsed "marked" difficulties in concentrating, persisting, or maintaining pace and four or more extended episodes of decompensation. *Id.* at 379. Neither form elaborates on how Dr. Garcia reached these conclusions.
- Finally, Social Security records from the first decision indicate that Plaintiff was found to have moderate difficulties in understanding, remembering, or applying information and in interacting with others. AR at 79. The records reflect a finding of marked difficulties in concentrating, persisting, or maintaining pace and in adapting or managing oneself. *Id.*

The ALJ in the current case gave Dr. Boyd's opinion "little weight for the period to which is [sic] applies, as it is not consistent with the record as a whole, including prior hospitalizations." AR at 22. However, the court has been unable to locate a reference to such hospitalizations in the

2

record. The ALJ also describes the agency consultants' opinions for this time period as "supported for the period during which they apply[,]" but does not reference what evidence "supported" them. *Id.* Again, the court has been unable to locate contemporaneous supporting evidence in the record.

While receiving Social Security benefits, Plaintiff was sporadically employed as a car washer, security guard, retail worker, and shipper/receiver. AR at 49–50. However, Plaintiff testified that these jobs "didn't last for long period[s] of time. I was let go." *Id.* at 48. He elaborated that "I cannot understand what I have to do. I have to keep repeating myself. Like, I ask them the task over and over and, like, they get tired of me. . . . I have to read things over and over and stuff like that, you know, to comprehend." *Id.* at 53. He said that he was let go from "[a]ll of" his jobs because he "wasn't up to par, they said." *Id.*

In 2020, the Social Security Administration reviewed Plaintiff's case. AR at 71. The Administration was unable to determine whether Plaintiff remained disabled based on the available medical records. *Id.* at 86. Although attempts were made to contact Plaintiff and arrange for a consultative examination, the Administration was apparently unable to reach Plaintiff. *Id.* at 76. Plaintiff did not present for a consultative examination despite Plaintiff and a third party receiving voicemails detailing the scheduled time and date of the examination. *Id.* As a result, the Administration had insufficient evidence to determine that Plaintiff remained disabled, and Plaintiff's disability was deemed to have ceased in January of 2021. *Id.* at 86.

Plaintiff contacted the Administration in May of 2021 objecting to the termination of his benefits. AR at 99. Plaintiff stated that he had not attended the consultative examination because Plaintiff never received a letter warning him that his benefits might end. *Id.* Plaintiff had some difficulty in his interactions with the Administration, as described by one Social Security employee:

> "Claimant would ramble on about needing his benefits reinstated. I mailed forms for him to complete. I stated clearly to give me a call when he receives the forms to help him complete it correctly. He mailed the forms back blank. He has a hard time understanding and following directions."

*Id.* at 280. The employee also noted that Plaintiff had difficulty concentrating. *Id.*

The Administration scheduled a telephone hearing in Plaintiff's case for October of 2021 and sent him written notice thereof in September 2021. AR at 106. However, Plaintiff did not attend the hearing. *Id.* at 111. A second letter, noting that the hearing had taken place without Plaintiff and urging Plaintiff to contact the Administration immediately, was sent immediately after the hearing. *Id.* Plaintiff did not respond to that letter, either. *Id.* at 115. Later that month, the hearing officer determined that Plaintiff's disability had ceased based on the lack of evidence and Plaintiff's failure to cooperate. *Id.* In December of 2021, Plaintiff requested reconsideration of the hearing officer's decision, objecting that he had not received a phone call about the upcoming hearing. *Id.* at 123. Later, when requesting a hearing before an ALJ, Plaintiff elaborated that he "never received a phone call or mail" regarding his claim and had "missed the phone call from SSI[.]" *Id.* at 135. Ultimately, an ALJ hearing was scheduled for November of 2022. *Id.* at 173.

At the hearing before the ALJ, Plaintiff repeatedly expressed confusion about the process, asking "what is this hearing for?" and noting that he "had trouble, like, understanding" documents he was sent about his right to counsel. AR at 37–38. Plaintiff testified that he had been homeless until a few months before the hearing and "was staying here and there, in my car" during that time. *Id.* at 55. At the end of the hearing, Plaintiff asked why "they try to, like question my Social Security[,]" even though the ALJ had explained the routine nature of the review to Plaintiff at the beginning of the hearing. *Id.* at 59. The ALJ arranged for Plaintiff to attend a psychological evaluation after the hearing. *Id.* at 46.

Plaintiff was examined by Dr. Jacklyn Chandler in January of 2023. AR at 556. Dr. Chandler observed Plaintiff to be "immature for his age level" and described Plaintiff's "insight and judgment [as] compromised, commensurate with his level of cognitive ability." *Id.* at 557. Other than this, Plaintiff's mental status examination findings were unremarkable. *Id.* Dr. Chandler assessed Plaintiff's full-scale IQ to be 67, in the "extremely low range." *Id.* at 557–58. She assessed his "overall intellectual ability within the borderline range[.]" *Id.* at 558. She opined that Plaintiff would have "moderate difficulty carrying out simple job instructions[,]" "moderate difficulty understanding and remembering . . . and moderate to marked difficulty carry[ing] out

4

complex instructions[,]" "moderate difficulty adapting to changes in routine work settings[,]""moderate difficulty maintaining attention and concentration[,]" and "moderate difficulty functioning under normal stress in a work setting." *Id.* at 559. Elsewhere, Dr. Chandler opined that Plaintiff would have moderate to marked difficulty in "mak[ing] judgments on complex work-related decisions." *Id.* at 560.

The ALJ ultimately decided that Plaintiff's disability had ended on January 1, 2021. AR at 1). As relevant here, at step two of the Title II analysis and step one of the Title XVI analysis, the ALJ concluded that Plaintiff's disabilities did not meet or equal the severity of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 17. The ALJ concluded that Plaintiff was moderately limited in understanding, remembering, or applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, or maintaining pace; and moderately limited in adapting and managing himself. *Id.* at 17–18. Moving on to step three of the Title II analysis and step two of the Title XVI analysis, the ALJ pointed out that Plaintiff had originally been found to have a *marked* limitation in concentration, persistence, and pace in addition to a finding of more than four extended episodes of decompensation. *Id.* at 19. Based on this, Plaintiff's generally "minimal" mental status evaluation findings, no evidence of extended incidents of decompensation, and Plaintiff's "inconsistently good" activities of daily living, the ALJ determined that Plaintiff had medically improved since he originally became eligible for Social Security benefits. *Id.*

Plaintiff appeals.

**II.     Standard**

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct.

1148, 1154 (2019).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997).  "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**III.  Analysis**

20 C.F.R. § 404.1594(b)(1) states that a determination of medical improvement "must be based on improvement in the symptoms, signs, and/or laboratory findings associated with your impairment(s)."  Here, however, the court is unable to determine whether the ALJ correctly applied this standard, because at least some of the "symptoms, signs, and/or laboratory findings" underlying Plaintiff's original disability determination are missing from the record before this court.  "In the absence of the early medical records, the administrative record lacks a foundation for a reasoned assessment of whether there is substantial evidence to support the Commissioner's finding that [a claimant's current] condition represents an 'improvement.'" *Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002).  Faced with an incomplete record, the court has no way to determine whether the ALJ's finding of medical improvement is supported by substantial evidence in light of the record *as a whole*.

Aside from the deficiencies in the record, this matter must be remanded because the ALJ has not compared Plaintiff's current symptoms, signs, or laboratory results to his past ones, but rather to the broadly-stated impairment conclusions previously drawn by reviewing doctors.  As other courts in this District have held, "it is not enough for the ALJ to simply compare the medically determinable impairments and RFC determination assessed at the time of the most

6

recent favorable decision to those at present." *Keyes v. Saul*, 2021 WL 2953232, at *6 (N.D. Cal. July 4, 2021); *see also Zutphen v. Colvin*, 2016 WL 5358589, at *6 (N.D. Cal. Sept. 26, 2016) (remanding where ALJ cited only original Step 2 listing, but not the underlying medical records, and then concluded that the plaintiff no longer met the listing). This is because "making reference to [a reviewing doctor's or hearing officer's] opinions cannot substitute for the ALJ's own obligation set forth in 20 C.F.R. §§ 404.1594(b)(1) that *the ALJ* compare prior to current medical evidence." *Medina v. Colvin*, 2015 WL 5448498, at *11 (N.D. Cal. Aug. 21, 2015); *see also Veino*, 312 F.3d at 587 ("The Commissioner also argues that the record before us is adequate because the 1982 medical evidence was summarized in the Hearing Officer's decision . . . . The difficulty with the Commissioner's position is that these decisions are not evidence . . . . without any of the 1982 medical evidence in the record before us, this court cannot make a reasoned determination as to whether the DHO's summary is accurate or adequate.")

Here, the ALJ's decision rested on four factors: a comparison of Plaintiff's categorical limitations, Plaintiff's "minimal" mental status evaluation findings, no evidence of extended incidents of decompensation, and Plaintiff's "inconsistently good" activities of daily living. As detailed above, a comparison of categorical limitations does not constitute the proper comparison of "symptoms, signs, or laboratory findings." While Plaintiff's mental status evaluations in recent years appear to have contained minimal negative findings, the only mental status evaluation in the record predating the first decision—conducted by Dr. Boyd during her examination—was also mostly normal. And while the ALJ determined that Plaintiff's activities of daily living were inconsistent with Plaintiff's previously adjudicated Step 2 impairments, the proper inquiry is instead whether Plaintiff's activities of daily living, as evidence of his symptoms and signs of illness, are consistent with the "signs, symptoms, and laboratory findings" underlying Plaintiff's past disability determination. The ALJ attempted no such inquiry. Because three of the four bases for the ALJ's finding of medical improvement are legally faulty, the court cannot conclude that the ALJ's errors were harmless.

Accordingly, the ALJ's decision is reversed and the case is remanded to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: January 27, 2025

_____
ROBERT M. ILLMAN
United States Magistrate Judge